## CARON CORPORATION v. V. VIVAUDOU, Inc.

(Circuit Court of Appeals, Second Circuit. January 5, 1925.)

No. 228.

**1. Trade-marks and trade-names and unfair competition** ⊂⊃70(1)—**Imitation of make-up of another's goods restrained, when diversion of customers likely.**

While there is no monopoly in the use of a word, color, or ornament, yet the right of one to use such combination as he chooses will be restrained, where combination selected so simulates the make-up of another as to be likely to divert latter's customers.

**2. Trade-marks and trade-names and unfair competition ⊜⇒70(1)—Similarity of color in make-up of goods ordinarily not unfair competition.**

Color may be an effective means of fraud, but it must be a clear case in which mere similarity of color in the make-up' or dress of goods will constitute unfair competition.

**3. Trade-marks 'and trade-names and unfair 'competition ⊜⇒95(3)—Talcum powder and scent containers held not so evidently in imitation of plaintiff's containers as to warrant preliminary injunction.'**

Talcūm powder and bottles of scent, bearing the trade-names "Narcisse Jaune" and "Narcisse de Chine" in ornamented containers, *held* not so evidently in imitation of plaintiff's black containers bearing trade-name "Narcisse Noir" as to warrant preliminary injunction restraining use of such containers.

**4. Trade-marks and trade-names and unfair competition ⊜⇒97—Injunctive relief must follow allegations of bill.**

In suit to restrain unfair competition, the relief must follow the bill, and not be broader than its allegations.

Appeal from the District Court of the United States for the Southern District of New York.

Bill' for injunction by the Caron Corporation against V. Vivaudou, Inc. to restrain infringement ' of trade-names and unfair competition. From an injunction pendente lite, defendant appeals. Reversed, and motion for preliminary injunction denied.

Mark Eisner, of New York City (Harry D. Nims, Minturnde S. Verdi, and Irwin M. Berliner, all of New York City, of counsel), for appellant.

Evarts, Choate, Sherman & Leon, of New York City (Joseph H. Choate, Jr., and Maurice Leon, both of New York City, of counsel), for appellee.

Before ROGERS and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge. This is a suit upon a registered trade-mark, "Narcisse Noir," for a scent, and upon unfair competition in the defendant's make-up. The plaintiff applied for an injunction pendente lite, and voluminous affidavits were exchanged, concerned for the most part with the trade-mark, which, though it means "Black Narcissus," was alleged to have acquired a secondary meaning. The District Judge declined to grant any injunction against the use of the defendant's trade-names, "Narcisse Jaune" and "Narcisse de Chine," but did enjoin the defendant's make-up. the plaintiff did not appeal from the refusal,

but the defendant appealed from the injunction. Hence it becomes necessary to discuss only that part of the order.

The plaintiff sold its scent under the trade-mark "Narcisse Noir," and to reinforce the association of the word "narcissus" with the color, black, inclosed the scent bottles in black boxes and gave them black stoppers. It sold a talcum powder, scented like the liquid, and this, too, it sold in black boxes. We may take it that it has done all it could by the use of black to supplement whatever the word "noir" might leave unsaid. '

The defendant makes a scent and a scented powder, which we shall assume to the ordinary nose to be indistinguishable from the plaintiff's and which it calls "Yellow Narcissus," or "Chinese Narcissus." It is the use of the word "Narcissus" which is the supposed verbal infringement. Its bottles and sachets it incloses in pasteboard boxes, garishly illuminated with a floral design, after Chinese, or we should rather suppose Japanese, models. This design represents three full-blown flowers and one bud of what is no doubt intended to be the narcissus flower. The main part of the flower is in vermillion on a green stalk, and the general background is in part of a deep, in part of a slate, blue. But the inside of the corolla is colored black, as is the tip below the calyx, where the flower joins the stalk. As the flower is shown in perspective, only a small part of the inside of the corolla appears, and the black area is very trifling compared with the whole.

One of the narrow ends of the box is colored black substantially over all its area, and there is an appreciable black surface on the sides, but the top has no black besides the flowers. On the black end appears the legend, "Narcisse de Chine, Vivaudou." These boxes come from France, and, as required by law, are marked on the bottom "Made in France," though the bottle, the scent, and the powder are made in this country. The plaintiff succeeded in getting into the injunction a provision against the use of this phrase unless modified.

[1] We think it unnecessary to review the decisions touching the use of colors in commercial make-up and the extent to which that use may be controlled in the interest of fair trade. Such cases necessarily involve a compromise between conflicting interests and do not involve absolute rights. They are in substance quite the same as cases of secondary meaning and "nonfunctional" design. While the plaintiff has no right to a monop-

oly in the use of the word, the color, or the ornament, simpliciter, when it becomes an element in a manifold likely to divert from him his customers, the law will prevent its use. It is quite true that the defendant's "right" to use such combinations as he chooses is curtailed, but his interest in any particular combination is too trivial to stand against the plaintiff's damage in his loss of trade. The law can compose such conflicts only by recourse to the relative importance of the interests involved. There is no rule.

[2] Color may be an effective means of fraud (Garrett v. Garrett, 78 F. 472, 24 C. C. A. 173 [C. C. A. 6]; Walker v. Grubman, 224 F. 725 [D. C.]), though the cases, so far as we know, have always turned upon color as an element in a dress otherwise shown to be fraudulent. However, we have no disposition to lay down limits to a field which is inevitably vague, beyond observing that it must be a clear case in which mere similarity in color will be enough. More generally, the plaintiff has been unsuccessful. Schlitz v. Houston, 250 U. S. 28, 39 S. Ct. 401, 63 L. Ed. 822; Diamond Match Co. v. Saginaw Match Co., 142 F. 727 (C. C. A. 6); Morse v. Lowney, 256 F. 935 (D. C.); Taylor v. Bostick, 299 F. 232 (C. C. A. 3); Smith-Kline Co. v. American Drug Syndicate, 273 F. 84 (C. C. A. 2).

In all such cases we commonly use our own eyes, and must project in imagination any possible confusions to which a careless buyer might be subject. If there were proof of actual confusion, we could correct our naive impressions; but the single instance proffered is too slight for reliance. Thrown upon what our senses tell us, we have no hesitation in finding that there is neither suggestion nor even intimation from the top of the defendant's boxes that their contents is the familiar "Black Narcissus" scent. These gaudy red flowers on their green and blue background cannot, so far as we can see, lead any one to think that they represent black flowers. The black spots in the center are apparently meant to represent shading, but it makes no difference what they are.

[3] The black end, on which appear the words "Narcisse de Chine, Vivaudou," does, it is true, make a more plausible case. The boxes stacked in files, with that end showing, conceivably might deceive a hasty buyer, seeing the word on a black background and no more. But we have no evidence that the boxes are so stacked, or sold from stacks, nor have we any substantial reason to suppose that buyers are in fact deceived. Normally we should say the box is seen from above; the eye gets its impression from a glance at the whole. Perhaps not; we need say at present no more than that the case is too uncertain for relief pendente lite. If the defendant is fraudulently disposed, at least it has been strangely wary in execution. We should have to be convinced by unusually strong proof that so trifling a feature was of consequence. At the trial more may appear, or the defendant, now advised of the possibility of confusion, may choose to eliminate any black at all from its dress, having run off its present stock of boxes.

[4] The opinion was filed on September 3d. On October 11th a former employee of the defendant, one Vogt, made an affidavit in which for the first time mention was made of certain display placards, which were distributed in the summer of 1924 to retailers, and also of the legend, "Made in France," on the bottom of the boxes. The bill lays neither of these features as a ground of relief, and the relief must follow the bill. The plaintiff may wish to amend, and may in the end succeed in respect of either or both these matters; but we think it best to say nothing about them at the present time. They were afterthoughts, brought in when the case had already been decided, and only a few days before the order was signed. On the record as it stands, the plaintiff is not entitled to any relief upon them.

Order reversed; motion for preliminary injunction denied.