INTERNATIONAL LATEX CORPORATION, Respondent, *v.* FLEXEES, INC., et al., Appellants.

First Department, March 3, 1953.

364

*Asher Blum* of counsel (*Mock & Blum,* attorneys), for appellants.

*Milton Handler* of counsel (*Arthur M. Borden, Sidney J. Silberman* with him on the brief; *Lorenz, Finn & Nobiletti,* attorneys), for respondent.

BERGAN, J. Plaintiff International Latex Corporation manufactures and sells under its registered trade-mark " Playtex " articles made of latex rubber which include women's girdles. In 1940 plaintiff began to sell girdles individually packaged in a slim tubular container displayed in a counter dispenser.

Plaintiff's chairman of board of directors described this method of display and sale as " unique, distinctive and original." As of 1940 he felt that he had " devised " a novelty in " merchandising method."

Defendant Flexees is a subsidiary and distributor for defendant Artistic Foundations, Inc., a manufacturer, which since 1932 has been using the trade-mark " Flexees " in women's brassieres, girdles and corsets. This trade-mark has been regularly attached to these products of defendants.

The products of the plaintiff and defendants have respectively been extensively advertised and promoted in the trade. Plaintiff's girdle consists of a single sheet of latex rubber which is either lined or unlined. Defendants' girdle, so far as material here, is made of two-way stretch nylon in three sizes.

Before February, 1952, the Flexees girdles of defendants were sold either in unpackaged form to be wrapped by the retailer, or in flat packages. In January, 1952, defendants announced to the trade they were about to market their girdles in a tubular package. This announcement was closely followed by the institution of this action on February 15, 1952.

The complaint pleads that by their announced marketing methods defendants will become engaged in unfair competition with plaintiff. The theory of action, as plaintiff describes it on appeal, is that the defendants' tubular package " is an imitation and an unlawful simulation of plaintiff's SLIM tube."

A permanent injunction is sought in a prayer for relief framed in very broad language. The court at Special Term has granted a temporary injunction during the pendency of the action cast in terms quite as broad as the ultimate relief sought in the complaint and, in the sweep of its directions, giving plaintiff the optimum of injunctive relief that it could obtain if it were completely successful on the trial of the issues. It is from this order defendants appeal.

No merchant can acquire in this decade of this century an exclusive right to display his merchandise in prewrapped packages. The practice has been growing consistently in the United States over a very long period and in a wide and ranging field of salable merchandise. As a " method " of display

and sale of merchandise it belongs to the business community and we would accept without much hesitation the statement made in the opposing affidavit of defendants' president that there has been a recent " pronounced tendency " to sell articles in self-service units so that the selection can be made by customers " with little or no attention by a sales clerk."

Thus the merchant who began to package frozen vegetables or meats or toothbrushes or tea or cereals could expect that the package method of retailing would be imitated as the convenience, standardization and sanitation of prepackaged display and sale became accepted by consumers. And where the form of the package is not unique, but utilizes common materials and shapes and is appropriate to the size and kind of goods sold, an exclusive and enforcible right to use a packaged form usually will not be regarded as having been acquired.

There are however shapes and forms of containers which are so unique and distinctive that they become associated by long utilization with a particular product. Such an imitation will be treated as unfair competition. But a court should not vest the exclusive right to use square or a round form of box or a cylindrical form of container in any merchant. It is difficult to adduce a " secondary meaning " to a round box or a flat box or a cylindrical box in the sense in which that term has been used judicially to restrain unfair competition. These practical and utilitarian forms are the common and available property of merchants generally.

The proof by the manufacturer of defendants' containers is uncontradicted that packages of this type have been extensively manufactured and used in the United States for ten years. The defendants' cylinders are made of cellulose acetate and the form of the containers is described by the manufacturer as " the simplest, cheapest and strongest " available because it can be made easily by automatic machinery.

The size of the tube, seven and three-quarter inches, as compared with plaintiff's eighteen and one-half inch tube, is dictated by the size of the defendants' girdle which snugly fits the tube using " a minimum of material ". Proof of the utilization of this kind of container by merchandisers of other brands of women's girdles; of women's slips and stockings; of children's underwear and other similar products is adequately demonstrated in the record.

But even a utilitarian form of box or container which would be commonly available to merchandisers could also become

an instrument of unfair competition. While no one could acquire the exclusive right to use a square box in trade, an imitative sign on a square box could become a destructive instrument of competition and impair the efforts and investment of a manufacturer or merchandiser.

We think the cylinder container, as it is to be used by the defendants, does something more than utilize, merely, a generally available form of package. In some aspects the utilization seems engrafted on the special merchandising pattern followed for some years by plaintiff; and to the extent that this is clearly demonstrated in the record the temporary restraint granted at Special Term should be continued until the trial.

It is the usual view taken of temporary injunctions, however, that they should be minimal in their restraint and do only what is clearly demonstrated as necessary to be done during the pendency of the action. The plaintiff's tube has an opaque background color of gold, silver or '' shimmering pink ''. Defendants' tube is transparent disclosing the girdle within.

Plaintiff's tube, however, bears a design, repeated three times, of a rear-view picture of a girl wearing a girdle with arms upstretched above her head holding a round sign containing the inscription '' Playtex ''. Defendants' package also bears a design repeated three times of a rear-view picture of a girl wearing a girdle, arms upstretched above her head, holding an object partially rounded at the point held, and containing the inscription '' demi-tasse '' or '' Flexees ''.

It is this combination that seems to us to encroach on plaintiff's trade practice. In detail much of it can be justified. It is reasonable, for instance, to illustrate a girdle on the female figure for which the girdle is designed. If such an illustration is to be legible on a tube it must run lengthwise with the tube.

The adoption as a whole is what seems harmful. It is the tubular container, plus the illustrative figure with upstretched arms holding the rounded form, plus the use of '' demi-tasse '' which seem all together to carry competition over the line of fair practice. Such elements are often treated in their total effect. *Schlitz Brewing Co.* v. *Houston Ice Co.* (250 U. S. 28) and *Caron Corp.* v. *V. Vivaudou* (4 F. 2d 995) are illustrative.

The term '' demi-tasse '' has been used by both parties in collateral merchandising but the harm of its use here does not arise so much from a prior right acquired by plaintiff as it does from the fact that the term '' demi-tasse '' on a cylinder seven three-quarter inches long facilitates the implied sug-

gestion that it is a smaller and related product to that sold in plaintiff's eighteen and one-half inch tube. The placing of this term in the round inscription area held in the upstretched arms of a similarly clad girl strengthens this suggestion.

The stand on which plaintiff displays its packages is patented; defendants employ an ordinary stand in common use which does not infringe on plaintiff's patent and which is clearly marked with defendants' trade term " Flexees."

The injunction should be recast to restrain defendants during the pendency of the action from using the representation of the standing figure with arms upstretched and the term " demi-tasse " on or in connection with the display of its cylindrical packaged girdles. The order should expressly provide that the defendants are not restrained from using the seven and three-quarter inch transparent container displaying clearly the term " Flexees " or an illustrative female figure not standing and with arms upstretched; or from using the stand described in the record except that the stand shall not contain the term " demi-tasse ". This would seem to us to allow a flow of fair competition between the parties.

The respondents rely on a decision of this court in *International Latex Corp.* v. *Scheinberg* (263 App. Div. 861) decided in 1942. The court at Special Term after a trial had there granted a permanent injunction restraining that defendant from using the containers and sales methods as being in unfair competition with this plaintiff. This court enlarged the injunctive scope of the judgment. Plaintiff there conceded that defendant could use any shape or size of container.

Even as enlarged by this court the judgment did not prohibit expressly the use of a tubular container but it provided restraint as to the use of tubes, caps, display stands and methods of advertising " so similar to those of plaintiff as might tend to deceive the trade or the public." Our modification of the present order is designed to restrain practices demonstrated as constituting unfair competition, but to allow merchandising to proceed freely in areas of fair and open competition.

Any party who is restrained by a court is entitled to clear denotation of what he is not permitted to do (*May's Furs & Ready-to-Wear, Inc.,* v. *Bauer,* 282 N. Y. 331). General injunctive language, such as a prohibition against displaying packages " in such a manner as to make it difficult to differentiate the girdles manufactured by defendants from the girdles manufactured by plaintiff " is pregnant with new litigation, because

such words are open to as much dispute as the underlying acts prohibited. Appellants are entitled to a fair measure of precision in a court's interference with their business.

The order should be modified as indicated, with costs and the order should be settled on notice.

Cohn, J. (dissenting in part). The devices and methods employed by defendants in connection with the display, merchandising and advertising of their girdles appear to be component parts of a plan to deceive and confuse the public, and their acts and practices in such connection were properly held by the Special Term to constitute unfair competition against plaintiff. Accordingly, plaintiff was entitled *pendente lite* to all of the injunctive relief granted. (*International Latex Corp.* v. *Scheinberg*, 263 App. Div. 861.) The order should in all respects be affirmed.

Dore, J. P., and Breitel, J., concur with Bergan, J.; Cohn, J., dissents in part, in opinion.

Order modified in accordance with the opinion herein. Settle order on notice. [See *post*, p. 1029.]