**SELCHOW & RIGHTER COMPANY
and Horn Abbot Limited, Plaintiffs,**

v.

**DECIPHER, INC., Defendant.**

**Civ. A. No. 84–505–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Dec. 12, 1984.

---

**1492**

Walter D. Ames, Watson, Cole, Grindle & Watson, F.M. DeRosa, B.X. DeRosa, Washington, D.C., D.N. Huff, Edward H. Starr, Jr., Richmond, Va., for plaintiffs.

G. Hamilton Loeb, James Kevin Wholey, Patrick W. Shea, Paul, Hastings, Janofsky & Walker, Washington, D.C., Vann H. Lefcoe, Livesay & Lefcoe, Portsmouth, Va., for defendant.

## OPINION AND ORDER

DOUMAR, District Judge.

Success breeds imitation. The unprecedented success of the trivia board game TRIVIAL PURSUIT has brought a rash of trivia products to the marketplace. The Court is called upon to determine how close a manufacturer of trivia cards, designed primarily to be played with the TRIVIAL PURSUIT game, can imitate the trade dress of both the TRIVIAL PURSUIT card and the packaging of the TRIVIAL PURSUIT replacement card sets without violating the prohibition against unfair competition. The plaintiffs, Selchow & Righter Co. and Horn Abbot Limited, are, respectively: the exclusive United States licensee of TRIVIAL PURSUIT brand games and, the owner of intellectual property rights in TRIVIAL PURSUIT brand games, including the trademark TRIVIAL PURSUIT. Plaintiffs, relying upon the Trademark Act of 1946 (Lanham Act), 15 U.S.C. §§ 1051–1127, brought suit against the defendant, Decipher, Inc., alleging trademark infringement and unfair competition. Plaintiffs claim that the defendant has violated § 32 of the Lanham Act, 15 U.S.C. § 1114(1); and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Decipher, Inc. (a Virginia corporation) produces and markets FORTE Trivia Cards, a card set designed primarily for use with the TRIVIAL PURSUIT game. The jurisdiction of the Court over the defendant and the subject matter is not contested.

Plaintiffs initially moved for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. The parties appeared before the Court on October 18, 1984. Rather than ruling upon the motion for a preliminary injunction, the Court, with the parties' consent, expedited the date of the trial. Furthermore, the Court, with the agreement of counsel, ordered that the issues of liability and damages be bifurcated, such that the issue of liability be tried to the Court and the issue of damages be tried, if necessary, to a jury. A three-day bench trial commenced on November 19, 1984 and the Court, for the reasons stated below, has decided to grant plaintiffs' request for a permanent injunction.

The game TRIVIAL PURSUIT was designed by Canadians Chris Haney and Scott Abbot of Horn Abbot Ltd. (a Canadian corporation). Plaintiff Horn Abbot Ltd. has obtained a registered trademark for TRIVIAL PURSUIT and Design (U.S.Reg. No. 1,236,504 issued May 3, 1983), a patent upon the game board design (U.S. Patent No. 270,741 dated September 27, 1983) and a copyright upon the game board (Copyright Reg. No. VA 95–532 dated November 10, 1981). Horn Abbot Ltd. and Selchow & Righter Co. (Selchow) entered into a license agreement by which Selchow has the exclusive right to manufacture and sell TRIVIAL PURSUIT games in the United States. Plaintiff Selchow is a New York corporation engaged in the manufacture and sale of board games. Also among its products are the SCRABBLE brand crossword games and the PARCHEESI board game.

The game TRIVIAL PURSUIT involves the answering of trivia questions. The game is played by rolling a die and maneuvering tokens around a multi-colored game board. Players are required to answer trivia questions from cards in one of six different categories according to the color of the space on which their token lands. The colors denoting the question categories are, in the order of their appearance on the question and answer cards—blue, pink, yellow, brown, green and orange. The winner of the game is the first person who successfully answers questions from all six categories after landing on certain designated spaces.

TRIVIAL PURSUIT brand games were first sold in the United States during November, 1982 in the form of the TRIVIAL PURSUIT Master Game-Genus Edition. The Genus Edition contains a game board, question and answer cards contained in boxes, rules of play, colored player tokens and colored scoring wedges, and a die. In the Genus Edition, the colors and their coded question categories are: blue—geography; pink—entertainment; yellow—history; brown—art and literature; green—science and nature; and orange—sports and leisure. The Genus Edition is marketed in a royal blue colored box. This royal blue color is also used as the dominant color of the game board and the card boxes, as well as the question and answer cards.

The Genus Edition has achieved unprecedented commercial success in the United States. It may very well have touched off a new interest in trivia. After frequent play of the Master Game, questions will inevitably be repeated. Therefore, there is a substantial demand for replacement cards containing new questions that can be used with the Master Game. To address this demand, Selchow manufactures and sells subsidiary card sets to use with the Master Game. Thus, TRIVIAL PURSUIT—Silver Screen Edition became available to the general public during the second quarter of 1983, followed by TRIVIAL PURSUIT-All-Star Sports Edition in the fourth quarter of 1983 and TRIVIAL PURSUIT—Baby Boomer Edition during the beginning of the second quarter of 1984. Selchow also has plans for additional subsidiary card sets.

The subsidiary card sets retain the same trade dress as the Genus Edition. As the Genus Edition, each TRIVIAL PURSUIT subsidiary card set contains one primary color on the outside box, the inside boxes holding the cards and the cards themselves. The primary color of the Silver Screen Edition is silver, the All-Star Sports Edition is green and the Baby Boomer Edition is maroon. Each subsidiary question and answer card retains the original design of the Genus Edition's card including the order of the colors denoting the question categories. Thus, blue is first, followed by pink, yellow, brown, green and orange. On the Silver Screen Edition, the coded categories are blue—settings; pink—titles; yellow—off screen; brown—on screen; green—production; and orange—portrayals. In the All-Star Sports Edition, the coded categories are blue—nicknames; pink—football; yellow—catch all; brown—basketball; green—baseball; and orange—numbers. In the Baby Boomer Edition, the coded categories are blue—television; pink—stage and screen; yellow—nightly news; brown—publishing; green—lives and times; and orange—r.p.m. As the Genus Edition, the subsidiary card sets are enjoying unprecedented success in the marketplace.

Defendant Decipher, Inc. (Decipher) is a Virginia corporation formed in September, 1982 that manufactures and sells games. Defendant's initial product was DECIPHER THE $100,000 PUZZLE, a jigsaw puzzle that, when assembled, reveals a series of numbers that constitute a multiple substitution cipher. Decipher's Chief Executive Officer and primary shareholder, Warren L. Holland, Jr., created and designed FORTE Trivia Cards-Volume One. In his attempt to participate in the market for replacement cards, Mr. Holland designed a card set remarkably similar in appearance to that of TRIVIAL PURSUIT. Mr. Holland believed that the TRIVIAL PURSUIT subsidiary card sets were deficient because, unlike the Genus Edition, each replacement set deals only with a particular field: i.e., Silver Screen—movies; All-Star Sports—sports; Baby Boomer—questions that relate to those born after World War II. Furthermore, all TRIVIAL PURSUIT question and answer cards do not identify the category applicable to the particular color of the color code on the card itself. Therefore, a player must constantly look to a conversion sheet to determine which particular category a color of the color code represents. Decipher set out to produce a replacement card set with a greater variety of categories than that of

the TRIVIAL PURSUIT subsidiary card sets. Furthermore, this card set would contain the categories represented by each color of the code on the question and answer card.

Mr. Holland first thought of creating a replacement card set during March of 1984, consulted a manufacturer in April and was able to produce a prototype design of the outside box, the cards and the inside boxes that would hold the cards by May, 1984. Both the prototype and the actual product FORTE Trivial Cards bear an uncanny resemblance to the TRIVIAL PURSUIT subsidiary card sets. Emblazed on the top of FORTE's outside box in prominent letters is the phrase "Real Questions For Your Trivial Pursuit™ Game." Each of the four side flaps of the outside box contains the phrase "6,000 Real Questions for your Trivial Pursuit™ Game". The design of both the packaging and the question cards are virtually identical to the TRIVIAL PURSUIT subsidiary sets. Even the order of the color code on the FORTE Trivia Cards mimic TRIVIAL PURSUIT's question and answer cards so that blue is first followed by pink, yellow, brown, green and orange. The categories of FORTE Trivia Cards—Volume One are, respectively: Soaps, Cartoons, Space, Pairs, Ads and Fair Play. FORTE made its debut at the May 1984 Stationary Show in New York City. FORTE Trivia Cards were first available in the stores in September. Decipher has plans for additional volumes of FORTE Trivia Cards.[1]

Alleging that the similarity of the trade dress of FORTE with that of TRIVIAL PURSUIT is likely to cause confusion in the marketplace, the plaintiff asks for relief in the form of an injunction as well as damages and an accounting of defendant's profits derived from its unfair trade practices. The Court is empowered to grant injunctive relief for violations of the Lanham Act pursuant to 15 U.S.C. § 1116. Profits of the defendant, treble damages incurred by the plaintiffs as well as attorney fees may be awarded pursuant to 15 U.S.C. § 1117. The equitable remedy of an injunction cannot be issued without a showing that the remedy at law, money damages, is inadequate. Generally, money damages are inadequate where a defendant has been found to be committing acts which constitute unfair competition. Indeed, an injunction is the preferred remedy to insure that future violations will not occur while damages may also be granted to compensate for past injuries. *See* 2 J. McCarthy, Trademarks and Unfair Competition § 30:2 (1973). Thus, the Court is empowered with broad authority to provide an effective remedy for unfair competition violations. *See William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 531, 44 S.Ct. 615, 617, 68 L.Ed. 1161 (1924).

Reduced to its essentials, the plaintiffs claim that the defendant has violated the prohibition against unfair competition by marketing FORTE in such a manner that its cards and packaging mimic the trade dress of TRIVIAL PURSUIT in violation of 15 U.S.C. § 1125(a).[2] Furthermore,

1. The proposed categories of Volume Two are: Whodunit?, Headline News, Western, Rock-n-Roll, Fairy Tales & Mother Goose and Fairplay. Volume Three will contain Celebrated Siblings, Broadway, War & Peace, The White House, Super Heroes & Arch-Villains and Fairplay. The suggested categories of Volume Four are: Words, Hollywood, Games, Radio Theater, Wisdom of the Ages and Fairplay.

2. 15 U.S.C. § 1125(a) provides:
 Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words

or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

defendant's use of plaintiffs' trademark TRIVIAL PURSUIT thirteen (13) times on the FORTE box especially the phrase "Real Questions For Your Trivial Pursuit ™ Game" on the top of the box and "6,000 Real Questions for your Trivial Pursuit ™ Game" on the four sides of the box, amounts to trademark infringement in violation of 15 U.S.C. § 1114(1).[3] The plaintiffs do not, in any way, challenge the defendant's right to sell a card set that can be used with the TRIVIAL PURSUIT game; they merely challenge the manner with which the defendant designed and marketed its FORTE product. Trademark infringement focuses only upon the defendant's use of plaintiffs' trademark, and is a form of unfair competition. On the other hand, unfair competition resulting from the defendant's copying of plaintiffs' trade dress must be determined by considering the total image of the defendant's product, including the use by defendant of plaintiffs' trademark. Because the 15 U.S.C. § 1114(1) trademark infringement claim is subsumed within the 15 U.S.C. § 1125(a) unfair competition claim[4] the Court will focus its analysis upon the § 1125(a) unfair competition claim.

The Lanham Act was designed, in part, to curb deceptive and misleading uses of trademarks and to provide protection against unfair competition. 15 U.S.C. § 1127. The statute was designed to protect not only business but also the general public from the use of false trade descriptions. *See AMP Inc. v. Foy*, 540 F.2d 1181, 1184–85 (4th Cir.1976). Section 1125(a) prohibits a competitor from deceiving buyers

into believing that its product is that of another. *See* 2 J. McCarthy, *supra*, § 27:7. This is sometimes referred to as "palming off."

Pursuant to § 1125(a), a trademark and trade dress are protectable if they are inherently distinctive or have acquired a secondary meaning to the general buying public. *See CBS, Inc. v. Logical Games*, 719 F.2d 1237, 1238–39 (4th Cir. 1983); *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 80–81 (3d Cir. 1982). Furthermore, the plaintiffs must demonstrate that the similarity of FORTE's trade dress with that of TRIVIAL PURSUIT's is likely to cause the general buying public confusion as to the origin of the FORTE product. That is, the buying public is likely to believe that FORTE Trivia Cards emanate from the makers of TRIVIAL PURSUIT. *AMP Inc. v. Foy*, 540 F.2d 1181, 1184 (4th Cir.1976); *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 953 (2d Cir.1980), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982). FORTE is, however, permitted to use aspects of TRIVIAL PURSUIT's trade dress and trademark if that use primarily describes aspects of the FORTE product. *See* 15 U.S.C. § 1115(b)(4) and *Mattel, Inc. v. Azrak-Hamway Int'l. Inc.*, 724 F.2d 357, 361 (2d Cir.1983) (trademark); 1 McCarthy, *supra*, §§ 7:26, 7:28, 8:6 (trade dress). This is referred to as a functional use. Thus it must be demonstrated that FORTE's use of TRIVIAL PURSUIT's trade dress and trademark does not primar-

---

**3.** 15 U.S.C. § 1114(1) provides:
Any person who shall, without the consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause confusion, or to cause mistake, or to deceive; ... shall be liable in a civil action by the registrant for the remedies hereinafter provided....

**4.** There is no essential difference between trademark infringement and what is loosely called unfair competition. Unfair competi-

tion is the genus of which trademark infringement is one of the species; .... All trademark cases are cases of unfair competition and involve the same legal wrong.
S.Rep. No. 1333, 79th Cong.2d Sess., 1946 U.S. Code Cong. & Ad.News 1275. *quoted in* 1 J. McCarthy, Trademarks and Unfair Competition § 2.2 (1973). *See Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 858, 102 S.Ct. 2182, 2190, 72 L.Ed.2d 606 (1982). *Professional Golfers Ass'n v. Bankers Life & Casualty Co.*, 514 F.2d 665, 671 (5th Cir.1975); *Habitat Design Holdings, Ltd. v. Habitat, Inc.*, 436 F.Supp. 327, 334 (S.D.N.Y.1977), *aff'd*, 573 F.2d 1290 (2d Cir. 1978).

ily serve a functional purpose. The Court will now endeavor to analyze each element.

█ Generally, trademarks are employed as a device to identify the origin of one's goods. Merely because one has a trademark does not, in and of itself, give the trademark owner an absolute monopoly on its usage. The law will protect only those trademarks that have attained secondary meaning. Secondary meaning is said to have attached when the public associates the trademark and trade dress with a particular source. *See* 1 J. McCarthy, *supra*, § 15 (1973). It is not necessary for the public to be aware of the name of the source from which a product emanates. "It is sufficient that the public is aware that the product comes from a single, though anonymous, source." *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 380 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). Secondary meaning may be established by demonstrating the unprecedented sales and promotion a product has achieved. *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1248 (4th Cir.), *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970).

Applying these factors to the instant case, it would appear that TRIVIAL PURSUIT has attained secondary meaning. TRIVIAL PURSUIT brand games have achieved unprecedented success in the marketplace. Richard P. Selchow, President of Selchow, testified that 1,000,000 units of TRIVIAL PURSUIT were sold during 1983, its first year on the market. Most of these sales were of the Genus Edition. During the first nine months of 1984 approximately 13,000,000 units have been sold. Estimates for the entire year project sales of 20,000,000 units and revenues approximating $400,000,000. These sales are divided approximately one-third to the Genus Edition and two-thirds to the subsidiary card sets, namely Silver Screen, All-Star Sports and Baby Boomer.

Selchow has spent only $1,400,000 advertising TRIVIAL PURSUIT products. This amount is small in relation to the magnitude of sales. In fact, because of the extreme popularity of TRIVIAL PURSUIT, Selchow has not generally found it necessary to place ads. Indeed, a major advertising campaign that has appeared in many of the most widely circulated magazines in the United States, is an advertisement called the TRIVIAL PURSUIT Survival Kit. This advertisement is, in effect, an apology for the shortage of TRIVIAL PURSUIT-brand games and contains on separate pages, copies of both sides of six TRIVIAL PURSUIT question cards. There have been numerous newspaper and magazine articles written about TRIVIAL PURSUIT-brand games. Mr. Selchow testified that, currently, Selchow can sell as many TRIVIAL PURSUIT-brand games as it can produce. The TRIVIAL PURSUIT phenomenon spans the entire United States. There even appears to be TRIVIAL PURSUIT tournaments.

The Court therefore concludes that the trade dress of the TRIVIAL PURSUIT question cards and the box wrap of the Genus Edition as well as the box wrap of the subsidiary card sets, namely, Silver Screen, All-Star Sports and Baby Boomer, have acquired secondary meaning. Indeed, the defendant has not seriously contested the question of secondary meaning and inasmuch as conceded this point during argument. By virtue of the TRIVIAL PURSUIT phenomenon, the Court is of the opinion that TRIVIAL PURSUIT is a strong trademark and a famous name and, as such, entitled to broad protection because "counterfeits more successfully prey on strong marks than on weak" ones. *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1248–49 (4th Cir.), *cert. denied*, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970). The Court will now consider the issue of the likelihood of confusion between TRIVIAL PURSUIT and FORTE.

█ The key issue in this case is whether it is likely that the public will be confused so as to believe that FORTE Trivia Cards emanate from the makers of TRIVIAL PURSUIT. Although mere pos-

sibility of confusion is not sufficient, a showing of actual confusion is not required; only a likelihood of confusion need be shown. *AMP Inc. v. Foy*, 540 F.2d 1181, 1186 (4th Cir.1976). In the instant case, evidence of the likelihood of confusion is found from four independent sources: (1) the Court's own viewing of the products; (2) the defendant's intent to confuse the public; (3) a department store display investigation; and (4) a statistical survey.

■ The Court may rely upon its own inspection of the products in determining whether there exists a likelihood of confusion. *Caron Corp. v. V. Vivaudou, Inc.*, 4 F.2d 995 (2d Cir.1925) (L. Hand, J.) ("In all such cases we commonly use our own eyes, and must project in imagination any possible confusions to which a ... buyer might be subject." *Id.* at 997). The Court's own viewing of the two competing products inextricably leads to the conclusion that there is a substantial likelihood of confusion.

■ To determine whether there is a likelihood of confusion, the Court must consider the total image of defendant's product, package and advertising and compare this with plaintiffs'. *Ye Olde Tavern Cheese Prod. Inc. v. Planters Peanuts*, 261 F.Supp. 200, 207 (N.D.Ill.1966), *aff'd*, 394 F.2d 833 (7th Cir.1967). The outside box[5] of the TRIVIAL PURSUIT subsidiary card sets is a rectangle form measuring approximately 7.5 inches in length, 6.5 inches in width and 2.75 inches in depth. Each TRIVIAL PURSUIT subsidiary card set has a primary color: Silver Screen—silver; All-Star Sports—green; and Baby Boomer—maroon. This primary color dominates the top and four sides of the outside box so that Silver Screen's outside box is silver with lettering in pink and black; All-Star Sports' outside box is green with yellow lettering; and Baby Boomer's outside box is maroon with white lettering. The bottom of the outside box of the TRIVIAL PURSUIT subsidiary card sets is white with black lettering. The outside box is wrapped in a transparent shrink wrap. Each subsidiary card set contains an elliptical label gummed on the shrink wrap in the upper right corner of the top of the outside box.

Upon opening the outside box of the subsidiary card sets, the first item a consumer will encounter is a manila colored sheet with black lettering explaining the categories and providing notes on playing with the subsidiary sets. The sheet is 7 inches long and 6.5 inches wide.

The next item one sees is two inner boxes.[6] Each inner box each contains 500 question and answer cards. Each card contains 6 questions and answers. The inner box is a rectangular form measuring approximately 6.25 inches in length, 2.625 inches in width and 3.625 inches in depth. The inner boxes maintain the color scheme of the outside box. Thus, Silver Screen is silver with pink lettering, All-Star Sports is green with yellow lettering, and Baby Boomer is maroon with white lettering. The top of the inner box does not contain any words so that only the primary color appears. The side panels contain the primary color and the TRIVIAL PURSUIT logo in the same colors as the outside box. The end panels are also in the primary color and contain the name of the edition in lettering consistent with the outside box. The bottom of the inside box is white. The inner box is designed so that the top of the box can be inverted and placed on the bottom inner white box. The resulting affect is that, during play, the cards are held in a box with the color scheme and logo viewable to the players. The two inner boxes are packaged in the outside box so that the

---

5. The term "box" is defined as a rectangle receptacle often with a lid or cover. Webster's Third New International Dictionary 263 (1981). A box, therefore, need not be completely enclosed. The term "outside box" as used in this opinion is actually the combination of two boxes: a fancy colored box which fits on a plain white inner box. Thus, the fancy colored box serves as a cover.

6. Each inner box is actually comprised of two boxes: a fancy colored box which rests on a plain white inner box. The inner box is similar in design to the outside box. See *supra* note 5.

white bottoms of the inner boxes are touching one another and the TRIVIAL PURSUIT logo of the side panels face the outside of the larger outside box.

As previously stated, each inner box contains 500 question and answer cards so that there are 1,000 cards in each subsidiary card set. There are 6,000 questions in total as there are 6 questions per card. The question and answer card measures 3.5 inches in length and 2.375 inches in width. On the question side of the card there is a vertical column of six ellipses each containing a color in the recited order: that is, blue, followed by pink, yellow, brown, green and orange. Following each colored ellipse is an individual question. The questions are in black letters with a white background. The border of the question portion of the card is in the primary color with an inside line of the same color as the lettering of the boxes. The answer side of the card also contains a vertical column of six ellipses each containing a color in the recited order. Following each colored ellipse is the answer to the question contained on the other side of the card. The left one-third of the answer side of the card contains a rectangle in the primary color with the name of the edition in the letter color. The answer side also contains a border in the primary color with a line in the color of the lettering. The design of the cards and the two inside boxes is the same as that of the Master Game—Genus Edition. The primary color of the Genus Edition is royal blue with lettering in orange. Although the shape of the outside box of the Genus Edition is larger because of its contents, the design is similar to the subsidiary card sets. Thus, the TRIVIAL PURSUIT design was established by the Genus Edition and followed by each TRIVIAL PURSUIT subsidiary card set.

The packaging and the product FORTE Trivia Cards mimic that of the TRIVIAL PURSUIT subsidiary card sets. The TRIVIAL PURSUIT subsidiary card sets, namely Silver Screen, All-Star Sports and Baby Boomer, are alike except for colors as Silver Screen is silver, All-Star Sports is green, and Baby Boomer is maroon. FORTE Trivia cards are black in the same places where the Silver Screen is silver, where the All-Star Sports is green and where the Baby Boomer is maroon. The FORTE Trivia Cards are packaged in a rectangular outside box identical in size to the outside box of the TRIVIAL PURSUIT subsidiary card sets. Thus, FORTE's outside box measures approximately 7.5 inches in length, 6.5 inches in width and 2.75 inches in depth. The primary color of the outside box is black with small white dots. The color black was also the primary color of defendant's other product: DECIPHER THE $100,000 PUZZLE. The lettering on the outside box is primarily in white and red. Appearing in red on the top of the box are the words FORTE and Volume One [7]. The remaining words are printed in white. On the top of the box, in large letters, appears the phrase "Real Questions For Your Trivial Pursuit Game." On each of the four black side flaps appears, in large white letters, the phrase "6,000 Real Questions for your Trivial Pursuit Game." In addition, each side flap contains a disclaimer in tiny small white print to the effect that FORTE is not produced by the makers of TRIVIAL PURSUIT. The term TRIVIAL PURSUIT is used thirteen (13) times on the colored portion of FORTE's outside box. The TRIVIAL PURSUIT subsidiary card sets only mention the term TRIVIAL PURSUIT eight (8) times on or above its colored portion of its outside box. The term TRIVIAL PURSUIT appears five (5) more times on the colored portion of FORTE's box than on TRIVIAL PURSUIT's. As the TRIVIAL PURSUIT subsidiary boxes, the bottom of FORTE's outside box is white with black letters. The bottom of FORTE's outside box manages to use the name TRIVIAL PURSUIT an additional three times. FORTE's outside box is wrapped in a transparent shrink wrap. Finally, not surprisingly, gummed on the shrink wrap in the upper right cor-

---

7. In a prototype of FORTE's next volume—Volume Two—the red color was changed to yellow.

ner of the top of the box is an elliptical label.

Upon opening FORTE's outside box the first item a consumer will see is a sheet of paper folded in half so that it measures 7 inches long and 6.5 inches wide. The sheet is manila colored with black lettering. The FORTE sheet is similar to the TRIVIAL PURSUIT sheet in dimension and color.

The next item one sees is two inner boxes. As TRIVIAL PURSUIT, each of the two boxes contains 500 question and answer cards. As TRIVIAL PURSUIT, each inner box is a rectangular form measuring approximately 6.25 inches in length and 2.625 inches in width and 3.625 inches in depth. The inner boxes retain the same color scheme as the outside of the FORTE box just as the TRIVIAL PURSUIT retains its color. Thus the FORTE inner box is black with white and red lettering. As the TRIVIAL PURSUIT design, the top of the FORTE inside box contains no lettering and the side panels contain the FORTE logo. One end panel contains the FORTE logo and the phrase "Real Questions for your Trivial Pursuit Game." As TRIVIAL PURSUIT, the top of the inner box can be inverted and placed outside the inner bottom box which also happens to be white. Furthermore, as TRIVIAL PURSUIT, the two inside boxes are packaged in the outside box so that the white bottoms of the inside boxes are touching one another and the FORTE logo on the side panels face the outside of the larger outside box.

Each FORTE inner box contains, as do TRIVIAL PURSUIT's, 500 question and answer cards. There are 1,000 cards in total containing 6,000 questions. This amount also happens to be the same as TRIVIAL PURSUIT. The dimensions of the FORTE question and answer card is the same as the TRIVIAL PURSUIT question and answer card. Thus, the card measures 3.5 inches in length and 2.375 inches in width. The question side of the FORTE card also has a vertical column of six colors and retains the same order as TRIVIAL PURSUIT, so that blue is followed by pink, yellow, brown, green and

orange. Instead of TRIVIAL PURSUIT's oval shape, the coded colors appear in a rectangle with rounded edges. The questions appear in black letters with a white background. The edges of the question side of FORTE's card follows TRIVIAL PURSUIT's border design so that there is a black border with a red line. The answer side of the FORTE card retains the TRIVIAL PURSUIT design so that the left one-third of the card contains a black rectangle containing the words FORTE Trivia Cards in red and white letters. The answer card also contains a vertical column of six rectangles with rounded edges containing the colors in the recited order. Following each colored rectangle is the answer corresponding to the question listed on the other side of the card. The background of the answer card is white and the lettering is in black. The answer card also retains the TRIVIAL PURSUIT border design so that the edges are black with a red line.

 The Court finds that the FORTE product is identical to the TRIVIAL PURSUIT subsidiary card sets in design and physical characteristics. FORTE's copying of TRIVIAL PURSUIT extends not only to the design and physical characteristics of the cards themselves but also to the design and physical characteristics of the packaging including the outside and inner boxes. FORTE even went so far as to parrot TRIVIAL PURSUIT's positioning of the inner boxes within the outside box. The Court finds that the defendant, except for getting new questions, changing the predominant color and using the term TRIVIAL PURSUIT more frequently, copied the TRIVIAL PURSUIT subsidiary card set product. The Court, therefore, based upon its own inspection, must, and does, reach the inescapable conclusion that the public is likely to be confused by the overwhelming similarities between FORTE's product and TRIVIAL PURSUIT's.

 A defendant's intent to deceive buyers is a factor to be considered in determining whether there is a likelihood of confusion. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 977 (11th Cir.

1983); *Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500, 506 (5th Cir. 1980). In this jurisdiction, intent to deceive buyers by exploiting the goodwill of another's registered trademark creates a presumption of a likelihood to confuse. *AMP Inc. v. Foy*, 540 F.2d 1181, 1186 (4th Cir. 1976). *See J. McCarthy, supra*, §§ 8:5, 23:30, 23:31. In addition, a junior producer is under an obligation to take affirmative steps to avoid a mistaken impression regarding the origins of the new product. *National Football League v. Governor of Delaware*, 435 F.Supp. 1372, 1380 (D.Del. 1977). Applying the facts to the above principles, the Court finds that the defendant intended to deceive buyers as to the origin of its FORTE product. Defendant's intent to deceive the buying public is, therefore, not only a factor leading to a finding of likelihood of confusion but also serves to establish a presumption of the likelihood of confusion, one which the defendant was unable to overcome.

The testimony of defendant's executives developed at trial revealed that the defendant desired to produce a product that could be uniformly displayed with other replacement card sets. Not surprisingly, at the time of FORTE's conception and through its initial production, the only replacement card sets on the market were TRIVIAL PURSUIT's. Thus, Silver Screen, All-Star Sports and Baby Boomer were the only such products available at the time the defendant came up with its product. The defendant, therefore, undertook to duplicate the shape and size of the TRIVIAL PURSUIT subsidiary card sets. This objective dictated the size and shape of not only the outside box but also the inner boxes and the FORTE cards themselves. Thus, to copy TRIVIAL PURSUIT's product, each of the two inner boxes had to contain, as TRIVIAL PURSUIT, 500 question and answer cards and the inner boxes had to be packaged lying on its side panel, identical to TRIVIAL PURSUIT. FORTE contained 6,000 questions on the 1,000 cards just as each of TRIVIAL PURSUIT's subsidiary card sets, namely, Silver Screen, All-Star Sports and Baby Boomer.

An inspection of a prototype FORTE trivia card reveals that the card originally contained the same shaped color coded ellipse as the TRIVIAL PURSUIT card. The prototype, however, did not contain a black colored border. When advised by its counsel to change the shape of the color code, the defendant also added the black colored border with a red line. The new border design appeared on both the question and answer sides of the card. This new border design parroted TRIVIAL PURSUIT's card design.

The prototype of FORTE's outside box did not contain an ellipse on the upper right corner of its shrink wrap. After meetings between defendant, defendant's counsel and plaintiffs' counsel, however, the defendant decided to include on its box words to the effect that FORTE Trivia Cards may be used for independent play. Mr. Holland, defendant's chief officer, testified that having had already produced the box, he was unable to place the words directly on the box. Curiously enough, this information appeared on an ellipse shaped label affixed to the shrink wrap on the upper right corner of the FORTE box. TRIVIAL PURSUIT's subsidary card sets had at that time and still has a similar shaped ellipse placed in the exact same place. The defendant would have the Court believe that this occurred purely by chance. Mr. Holland testified that Decipher's manufacturer informed him that the shape of the label, an ellipse, was standard and the only one available. Mr. Holland, stated that he did not care where on the box the sticker was placed and that the independent manufacturer made this decision. In fact, the officers of Decipher would have the Court believe that many of its design decisions were made by its manufacturer. The Court rejects this testimony and finds exactly to the contrary. The defendant consciously and willfully copied the plaintiffs' product and it was in no way accidental nor in any way a result of someone else's happenstance. Evidence developed at trial to the effect that Mr. Holland was very concerned as to how the FORTE product

would appear to consumers. Indeed, as creator, designer and producer of FORTE, this was one of his primary responsibilities. The outside boxes went through numerous revisions under Mr. Holland's direction. The court reaches the inescapable conclusion that, the elliptical shape of the sticker and its placement on the upper right corner of the outside box occurred not by accident but was designed by the defendant to make its FORTE product look even more like a TRIVIAL PURSUIT product.

 Furthermore, emblazed upon the top of defendant's outside box in large white print is the phrase "Real Questions For Your Trivial Pursuit Game." Each side flap of the outside box contains, in prominent print, the similar phrase "6,000 Real Questions for your Trivial Pursuit Game." Defendant FORTE's inside box also contains the phrase "Real Questions for your Trivial Pursuit Game." The author of these phrases, Mr. Holland, testified that these phrases are designed to convey to the public that the questions are genuine trivia questions. Apparently, Mr. Holland is of the opinion that there are many trivia products on the market that merely seek to cash in on the trivia craze but which do not contain actual trivia questions. Thus, an example of such a question on a ripoff card may, according to Mr. Holland, be "What is a dried grape called?" This, according to Mr. Holland, is not real trivia. The Court acknowledges that the word "real" is defined as genuine and that the word real, as used in the phrase modifies the word "questions". However, the officers of Decipher testified that, at the time of FORTE's production, they were unaware of any replacement card sets on the market except that of TRIVIAL PURSUIT. Thus, there was no need for defendant to distinguish its FORTE product from nonexistent products. Although a competitor may use the trademark of another to describe aspects of its own goods, see *infra*, the Court finds that the defendant sought to accomplish much more. The Court finds that the constant usage of the words "real", "Trivial Pursuit" and "6,000" (the same amount of questions contained in the TRIVIAL PURSUIT subsidiary card sets) in prominent print throughout the outside box was intended to suggest that FORTE cards are a genuine TRIVIAL PURSUIT product. The Court, based upon the facts developed, finds that the defendant intended to create confusion as to its product's origin.

Additional evidence that the public is likely to be confused as to the origin of FORTE trivia cards is department store display investigation. A private investigator, randomly selected stores that sold both TRIVIAL PURSUIT-brand games and card sets, and FORTE trivia card sets. The investigator found and visited ten stores that marketed both plaintiffs' and defendant's products in the Washington, Baltimore and New York City areas. The investigator took photographs of the displays of trivia games in the stores. In many of the displays the FORTE card sets and the TRIVIAL PURSUIT card sets were side-by-side. Pictures of displays in the local Hampton Roads area submitted by the defendant do not suggest otherwise. Thus, the defendant's goal to create a product that could be displayed with TRIVIAL PURSUIT products has apparently been accomplished. Upon entering the store the investigator asked a salesperson whether the store carried any trivia cards made by the people who make the TRIVIAL PURSUIT game. The salesperson directed the investigator to the proper department. The investigator proceeded to the trivia display which contained both the FORTE card sets and TRIVIAL PURSUIT card sets. The investigator picked up a FORTE card set and asked a salesperson "Are these made by the people who make TRIVIAL PURSUIT?" Approximately seven out of the ten sales clerks answered in the affirmative. The investigation is certainly not a scientific survey but, nevertheless, it seems to indicate that both the plaintiffs' and defendant's products are displayed together, just as the defendant had desired. The investigation also indicates that many sales persons, if asked whether FORTE cards were made by the makers of TRIVI-

AL PURSUIT, would probably tend to respond affirmatively. Apparently many sales persons in answering affirmatively, relied upon the phrase "Real Questions For Your TRIVIAL PURSUIT Game" printed on the top of the FORTE box. The Court, therefore, places some reliance and weight upon this investigation for its finding of likelihood of confusion.

Lastly, the Court finds evidence of likelihood of confusion in a statistical survey presented by the plaintiffs. The survey was conducted by a survey expert who has worked in the area of market research for the past thirty years. The survey consisted of two research studies. One hundred persons were interviewed in each study. The participants were evenly divided between males and females and five age groups. An interest in trivia games was established prior to any respondent's participation in the survey. The interviews were conducted in suburban shopping malls located within a fifty-mile radius of New York City. The first study, a package study, respondents were shown a FORTE trivia card package. Respondents were asked to look at the package as they would if they were thinking of buying such a product. The respondents were then asked a series of questions regarding who they thought made the trivia cards in the package they had just seen. The results of the package study indicated that 28 percent of the persons interviewed identified the FORTE trivia card package as a product of the company that made the TRIVIAL PURSUIT game. The second study was a display study in which respondents were shown a display of TRIVIAL PURSUIT products with the FORTE trivia card set. After viewing the display, 45 percent of the respondents identified FORTE as a product of TRIVIAL PURSUIT. The expert's conclusion was that the results indicate that sizeable proportions of consumers identify FORTE trivia cards as made by the makers of the TRIVIAL PURSUIT game.

The defendant attacked the plaintiffs' survey on numerous grounds. Defendant's expert testified that the sample size was too small, the respondents were not proper-ly selected, the suburban New York City area was geographically narrow and, therefore, not representative of the entire nation. Defendant's expert also stated that the survey was flawed because it failed to accurately recreate the purchasing environment, and failed to validate the results by telephoning a random sample of the respondents. Lastly, defendant's expert stated that the questions were leading, and therefore, biased.

■ Although the Court, as plaintiff's expert admitted, would have preferred to have these tests conducted in additional locations in the country, the Court does not believe this shortcoming is fatal. The same conclusion is reached with regard to the number of participants. The plaintiffs' expert testified that time factors limited his ability to conduct more extensive testing. The Court is of the opinion that although the New York City suburban area would not be representative of the nation in many surveys, the area is projectable in a survey of trivia card products. The Court is satisfied that under the circumstances, the survey simulated the marketplace to the extent that was practicable. The fact that the results were not validated by telephone calls does not severely disturb the Court. The Court does find that certain questions contained in the survey were leading and, therefore, somewhat biased. It must be recognized that no survey is perfect. The expert conducting the survey attended each and every interview through the use of a two-way mirror. The Court was impressed by plaintiffs' expert's knowledge and candor displayed upon the witness stand. The Court is of the opinion that the flaws exposed by the defendant should be taken into consideration in determining the weight that the Court attributes to the survey. *Standard Oil Co. v. Standard Oil Co.,* 252 F.2d 65, 75 (10th Cir.1958). Surveys, where the results were far more inconclusive than plaintiffs' survey, have been relied upon as strong evidence of likelihood of confusion. *See Grotrian, Helfferich, Schulz Th. Steinweg Nachf v. Steinway & Sons,* 365 F.Supp. 707, 716 (S.D.N.

Y.1973), *aff'd*, 523 F.2d 1331 (2d Cir.1975) (only 8.5% confused considered strong evidence of likelihood of confusion). Furthermore, the defendant had an equal opportunity to conduct its own survey but chose not to. The Court, therefore, diminishes the weight it affords to the survey but still relies upon it as evidence of the likelihood of confusion between the two products.

The Court, therefore, concludes that, based upon a statistical survey, a department store display investigation, its own inspection of both products and the finding that the defendant intended to confuse the public as to its product's origin, there is a likelihood that the public is confused as to the origin of the FORTE product.

 Having concluded that there exists a likelihood of confusion between TRIVIAL PURSUIT and FORTE, the Court must consider whether the extensive similarities of FORTE with TRIVIAL PURSUIT, including FORTE's use of TRIVIAL PURSUIT's trademark serves a permissible functional purpose. A purpose is functional if it is essential to the use or purpose of the product or if it affects the cost or quality of the product. *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 81 (3d Cir.1982). Generally, a competitor may not use another's registered trademark to sell its product without permission. A competitor can, however, use another's registered trademark to describe aspects of its own goods. 15 U.S.C. § 1115(b)(4). Defendant Decipher, thus, has a legal right, under the Lanham Act, to use the TRIVIAL PURSUIT trademark to describe aspects of its FORTE products so long as it does not attempt to deceive consumers as to the origin of FORTE. *Mattel, Inc. v. Azrak-Hamway Int'l. Inc.*, 724 F.2d 357, 361 (2d Cir.1983).

 It is, therefore, clear that FORTE may, on its package, state that it can be used for play with TRIVIAL PURSUIT. The Court, however, is of the opinion that the phrase "Real Questions For Your TRIVIAL PURSUIT Game" in large prominent letters on the top of outside box and the phrase "6,000 Real Questions for your

TRIVIAL PURSUIT Game" in prominent letters on all four side panels of the outside box goes further than describing a use of the FORTE product. Unlike *Mattel*, 724 F.2d at 361, where the questionable language was located on the package in a place and manner that only a close reader would notice, the questionable language on the FORTE package is prominently displayed. The Court is concerned that use of the word "real" may enforce any indecision on the part of a prospective purchaser as to the authenticity of the games as originating with the makers of the TRIVIAL PURSUIT-brand games. The Court finds that the defendant's use of plaintiffs' trademark oversteps permissible bounds. Rather than describing an aspect of its own product, FORTE's use of the TRIVIAL PURSUIT trademark, in large print in numerous locations on its box, serves to sell its product. Although imitation is a "sign" of success one cannot adopt another's "sign" to be successful. FORTE's success in the marketplace, as evidenced by sales of over 100,000 units for which Decipher earned $7.50 gross profit per unit, in such a short time with advertising which, at the time of sales was "de minimus" (if not nonexistent), may very well be attributed to FORTE's use of the TRIVIAL PURSUIT trademark. The Court, therefore, finds that defendant's use of the TRIVIAL PURSUIT trademark does not constitute a fair use but rather is likely to lead to confusion and mislead the public to the erroneous belief that defendant's card sets are manufactured, authorized or sponsored by the makers of TRIVIAL PURSUIT and thus violates 15 U.S.C. §§ 1114(1) and 1125(a).

 The Court also finds that defendant's adoption of the design, size and trade dress of plaintiffs' card set package and question and answer cards constitute a taking of nonfunctional features that are neither essential to the use or purpose of the cards nor affect the cost or quality of defendant's product. The Court finds that the only functional feature of the question and answer card is that it must have a color code containing the colors blue, pink,

yellow, brown, green and orange. The Court further finds that no functional purpose is served by copying TRIVIAL PURSUIT's order of the colors' appearance. Taking non-functional features that serve no purpose other than to identify the source of plaintiffs' game constitutes trade dress infringement and unfair competition under 15 U.S.C. § 1125(a). *See Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 850–51, 102 S.Ct. 2182, 2186, 72 L.Ed.2d 606 (1982); *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.,* 685 F.2d 78, 81 (3d Cir.1982).

The defendant lastly argues that the term TRIVIAL PURSUIT is recognized by the public as a generic term, descriptive of trivia games in general rather than as a designation of origin. The terms generic and trademark are mutually exclusive. Trademarks function to identify and distinguish the goods of one seller from those of all others. On the other hand, a generic term tells the buyer what the product is, not where it came from. 1 J. McCarthy, *supra,* § 12:1. Generic names are in the public domain and may be used by anyone. *Singer Mfg. Co. v. June Mfg. Co.,* 163 U.S. 169, 203, 16 S.Ct. 1002, 1015, 41 L.Ed. 118 (1896). Examples of terms that have been found to be generic include: aspirin—*Bayer Co. v. United Drug Co.,* 272 F. 505 (S.D.N.Y.1921); cellophane—*DuPont Cellophane Co. v. Waxed Products Co.,* 85 F.2d 75 (2d Cir.1936); dry ice—*Dryice Corp. v. Louisiana Dry Ice Corp.,* 54 F.2d 882 (5th Cir.1932); and light beer—*Miller Brewing Co. v. Heileman Brewing Co.,* 561 F.2d 75 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978). The defendant failed to perform any statistical surveys concerning the possibility that the term TRIVIAL PURSUIT has become generic. The only evidence of genericism offered by the defendant was its expert, who testified that, based on his marketing background, there was a significant likelihood that the term TRIVIAL PURSUIT has become or is becoming generic. The Court declines to find that the term TRIVIAL PURSUIT has attained generic status solely upon one expert's untested opinion. Furthermore, the Court notes the plethora of trivia games on the market that refer neither to TRIVIAL PURSUIT nor to TRIVIAL PURSUIT products. Based upon the evidence before it, the Court finds that the term TRIVIAL PURSUIT has not been accepted into our lexicon, at this time, as the generic terms referred to above. Accordingly, the Court rules that TRIVIAL PURSUIT has not become a generic term at this time.

To recap, the Court finds that the term TRIVIAL PURSUIT, in addition to the trade dress of the TRIVIAL PURSUIT question and answer cards, the box wrap and packaging of the Genus Edition as well as the box wrap, trade dress and packaging of the TRIVIAL PURSUIT subsidiary card sets have acquired secondary meaning. Based upon the Court's inspection of the products, its finding that the defendant intended to confuse the public as to its product's origin, a department store display investigation and a statistical survey, the Court finds that there is a likelihood that the public will be confused as to the origin of the FORTE product.

The Court finds further that the defendant's constant use of plaintiff's trademark does not serve a permissible functional purpose but serves to sell its product by causing the public to believe that FORTE is a TRIVIAL PURSUIT product. In this regard, the Court finds that the defendant deliberately set out to use the TRIVIAL PURSUIT trademark not for the purpose of explaining a use of its product but in order to sell its product by trading on the plaintiff's strong trademark. The Court reaches the same conclusion with regard to the defendant's adoption of the plaintiff's trade dress. The Court, based on the evidence before it, finds that TRIVIAL PURSUIT has not become a generic term. In conclusion, the Court finds that the defendant in designing its product intended to trade off of the plaintiffs' trademark and to confuse the public.

The Court, therefore, finds the defendant in violation of both 15 U.S.C. §§ 1114(1)

and 1125(a). Accordingly, the defendant is enjoined from marketing its FORTE trivia product in its present form. Pursuant to this injunction, the defendant is ORDERED to remove from public sale all FORTE Trivia Cards by December 31, 1984. The defendant shall report to the Court, within fourteen (14) days of the date of this order, the course of action it has undertaken to bring about the removal of FORTE Trivia Cards from public sellers and distributors, at which time the Court may enlarge the time for defendant to comply with this injunction.

IT IS SO ORDERED.