**BLACK & DECKER, INC. and Black & Decker (U.S.), Inc., Plaintiffs,**

v.

**NORTH AMERICAN PHILIPS CORP., Defendants.**

**No. B–84–751 (TFGD).**

United States District Court,
D. Connecticut.

Jan. 27, 1986.

H. Ross Workman, David O. Seeley, Salt Lake City, Utah, Don K. Harness (pro hac vice), G. Gregory Schivley, Harness, Dicket & Pierce, Birmingham, Mich., Ronald J. St. Onge, St. Onge, Steward, Johnston & Reens, Stamford, Conn., for plaintiffs.

John M. Calimafde, Paul H. Blaustein, Brian W. Stegman, Hopgood, Calimafde, Kalil, Blaustein & Judlowe, New York City, for defendants.

## ORDER

DALY, Chief Judge.

After review and over objection, the ruling of the Magistrate is hereby ADOPTED and RATIFIED in its entirety.

After review and absent objection, the ruling of the Magistrate is hereby ADOPTED, APPROVED and RATIFIED. The Court finds that the additional affidavits submitted by plaintiffs do not provide a basis for reversal or modification of the ruling granting defendant's motion for partial summary judgment adopted, approved and ratified by the Court today.

### RECOMMENDED RULING GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

July 24, 1985

JOAN GLAZER MARGOLIS, United States Magistrate.

On February 13, 1984, plaintiffs Black & Decker, Inc. and Black & Decker (U.S.), Inc. ("Black & Decker" or "plaintiffs") filed this patent and trademark infringement suit against defendant North American Philips Corporation ("NAPC," "Norelco" or "defendant") in the United States District Court for the District of Utah. Upon NAPC's motion for change of venue, the Utah court ordered the action transfer-

red to this district, in which NAPC has its executive offices and manufacturing plants.

Black & Decker's Second Amended Complaint, filed February 5, 1985, alleges three causes of action: Count I is for infringement of Design Pat. No. 257,661 ('661 patent), issued on December 28, 1980, and infringement of mechanical Patent No. 4,209,875 ('875 patent), issued July 1, 1980; Count II raises a claim for unfair competition under state law pendent to the claim for patent infringement (Count I) and trademark infringement (Count III), in that plaintiffs allege that defendant's portable rechargeable vacuum cleaner, NORELCO CLEAN UP MACHINE, substantially embodies the appearance of Black & Decker's DUSTBUSTER vacuum cleaner, that defendant has usurped the good will and exploited the advertising and promotion of plaintiffs' DUSTBUSTER vacuum cleaner, and that the defendant has copied plaintiffs' trade dress and intends to pass off the Norelco vacuum cleaners as those of plaintiffs; Count III claims that defendant's activities constitute "false description or representation and false designation as to origin and are likely to cause confusion" and deceive buyers as to the origin and quality of defendant's machines.

In its Answer, filed February 27, 1985, NAPC denies having infringed Black & Decker's patents and has asserted counterclaims which seek to invalidate the '661 and '875 patents, *inter alia*, for lack of patentable invention over the prior art, and to invalidate the trademark covering the design of the DUSTBUSTER portable vacuum cleaner.

Defendant has moved for partial summary judgment on Count I, in that the design of its NORELCO CLEAN UP MACHINE, sold under the Norelco trademark, does not infringe the plaintiffs' design patent '661, and on Counts II and III for trademark infringement and unfair competition. This motion for summary judgment does not attack plaintiffs' action for infringement of the '875 mechanical patent.

For the reasons stated herein, defendant's motion for partial summary judgment is granted.

## I. STANDARDS FOR GRANTING SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure requires that summary judgment be entered whenever the evidence presented indicates that no genuine issue of fact exists and that the moving party is entitled to the judgment as a matter of law. Summary judgment is "without question intended to be effectuated in patent litigation as in any other type of suit and in accordance with the same standards." *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1571 (Fed.Cir.1984). Although the court must decide the issue in favor of the non-moving party if it has any doubts about the existence of material facts, summary judgment is proper when no "significant probative evidence [exists] tending to support the complaint." *Peterson Mfg. Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1551 (Fed.Cir.1984). *See also Scovill, Inc. v. Dynamics Corp. of America*, Civil No. B–81–149, slip op. at 2–4 (D.Conn. Mar. 18, 1985).

The Court, mindful of the heavy burden borne by defendant in this motion, nevertheless rules that no evidence has been presented to show that a genuine issue of fact exists and that defendant is entitled as a matter of law to partial summary judgment. The Court finds that the defendant has infringed neither the plaintiffs' design patent '661 nor the DUSTBUSTER trademark.

## II. '661 PATENT INFRINGEMENT CLAIM

### A. *The Gorham "Eye" Test*

■ The accepted test of infringement of a patent design is the "eye" test, articulated in *Gorham Co. v. White*, 81 U.S. (14 Wall) 511, 528, 20 L.Ed. 731 (1871):

[I]f in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substan-

tially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

The Court has applied the test to the two products in issue, plaintiffs' DUSTBUSTER vacuum cleaner (Defendant's Exhibit 10), covered by the '661 patent, and defendant's accused structures, the NORELCO CLEAN UP MACHINE (Defendant's Exhibit 14). Based upon this physical inspection, the Court concludes that the overall appearance of the plaintiffs' DUSTBUSTER and defendant's CLEAN UP MACHINE are substantially different, so that there is no patent infringement.

There are many physical differences between the two products, the most obvious of which is the shape of their respective handles. The Norelco machine has a large closed-loop design, shaped like a parallelogram, whereas the handle of the Black & Decker machine appears as an extension of the dustbowl and extends rearward. Other obvious distinctions between the two machines include the air vents and the on/off buttons. The vents in the Norelco design are plain lateral slats located on the vertical sides of the housing in front of the handle; the air vents of the Black & Decker patented design extend around the sides and top of the housing. The on/off button of the Norelco machine operates like a trigger and is located inside the loop of the handle, whereas the on/off button of the patented design is located on top of the handle member.

In addition to the differences in the handles, the vents, and the on/off buttons of the machines, the contours of the two products are distinctive. The bottom contours are different because of the different handle designs. The top line profile of the Norelco machine is a slight curved diagonal. The top line profile of the DUSTBUSTER profile resembles an open inverted V.

The plaintiff argues that summary judgment is improper in light of *Park v. Milton Industries Inc.*, 223 U.S.P.Q. 719 (N.D.Ill. 1983), in which the court denied a similar

motion for summary judgment. The facts in *Park*, however, are easily distinguished from the present case. In *Park* the plaintiff claimed that the defendant infringed the patent design of a "blow-gun" product. The defendant moved for summary judgment, arguing that three changes had been made in its product which distinguished it from the plaintiff's product. The court found that because the changes were minor, it could not rule as a matter of law that there was no resemblance between the products so as to eliminate any genuine issue of material fact. In contrast, the design differences between the Black & Decker DUSTBUSTER and the NORELCO CLEAN UP MACHINE are substantial. Both machines consist basically of two separate parts, the wedged shaped dustbowl and the power handle. While the wedged shape bowls of the two machines are similar (See Part II. B. below), the handles are so distinct that an ordinary buyer would not purchase the NAPC product believing it to be the DUSTBUSTER. The Black & Decker handle extends rearward from the housing, while the handle of the CLEAN UP MACHINE forms a parallelogram. In addition, the other differences noted above combined with this distinctive arrangement leave no doubt in the eye of the ordinary observer that the products are not the same.

Plaintiffs also argue that comparison of the individual elements of the respective machines is impermissible. While the *Gorham* "eye" test anticipates that the court will make a judgment based on an overall impression of the products in issue and not compare individual components of a product the court cannot avoid a consideration of the constituent elements of the machines, if only to use these elements as a point of reference for making a general comparison. Moreover, when the elemental differences are numerous and substantial, their combined effect causes the product in overall appearance to be distinct and different. The Court notes the differences between the constituent parts of the opposing designs not as determinative by them-

selves, but as part of the process of evaluating the overall appearances of the product. The Court would "have been deficient if it had not so specified the underlying reasons for its appraisal." *Tappan Co. v. General Motors Corp. and Halle Bros. Co. Inc.*, 380 F.2d 888, 891 (6th Cir.1967). *See also Unette Corp. v. Unit Pack Co., Inc.*, Civil No. 84–2166, slip op. at 6–7 (D.N.J. Mar. 8, 1985).

▮ Thus, the Court concludes that the overall appearance of the Black & Decker DUSTBUSTER vacuum cleaner is quite distinct from the overall appearance of the NORELCO CLEAN UP MACHINE, based on comparison of the two machines and their constituent elements. Such a comparison is necessary in applying the "eye" test of *Gorham v. White, supra.*[1]

## B. *The "Point of Novelty" Test*

The different appearances of the Black & Decker DUSTBUSTER and the NORELCO CLEAN UP MACHINE, identified above, are by themselves sufficient evidence for the Court to rule that the two products are not so substantially similar as to deceive the ordinary observer. The Court, however, has noted not only the differences between the two machines, but also the similarities. In examining those similarities, the "point of novelty" test has been utilized as such test supplements the *Gorham* "eye" test, "the two requirements [of similarity and novelty] being conjunctive." *Shellar v. Durham Industries, Inc.*, 745 F.2d 621, 628 (Fed.Cir.1984). Therefore, in addition to considering the many dissimilarities between the two products in issue, the Court has also focused on the similar features shared by both products. As the court stated in *Litton Systems Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir.1984) ("*Litton*")

> Even though the Court compares two items through the eyes of the ordinary observer, it must, nevertheless, to find infringement, attribute their similarity to the novelty which distinguishes the patented device from the prior art.

The Court finds that the wedged shaped dustbowl of the Black & Decker DUSTBUSTER is not a novel feature, as the wedged shaped bowl in a vacuum cleaner design has been described in the British Licentia Patents. (Defendant's Exhibit 8).

The diagrams in the Licentia Patents, particularly figures 2 and 3, show distinctly a side view of a machine that has a wedge shape. The description of the machine (Defendant's Exhibit 8, p. 1, Col. 1, L. 44–46 and p. 2, L. 70–81) clearly depicts a "wedge form." The primary distinction between the wedge shape of the Licentia vacuum cleaner and the vacuum cleaners in the present case is that the Licentia machine has "sides rounded out" (Defendant's Exhibit 8, p. 2, L.70–81) while the Black & Decker DUSTBUSTER and the NORELCO CLEAN UP MACHINE are rectangular. This distinction, however, does not diminish the importance of the fact that the concept and the diagram of the wedged shaped casing are clearly described in the prior art. The wedge shaped feature is therefore not novel.

▮ The Court rejects plaintiffs' argument that defendant's motion for summary judgment rests on an "illegally impermissible" dissection of plaintiff's design patent.

---

1. Plaintiffs' Exhibits A–F appended to their brief in opposition, filed April 1, 1985, indicate that plaintiffs have been successful in protecting DUSTBUSTER's patented design and trade dress in five other lawsuits, by obtaining consent judgments in four suits and a favorable jury verdict in the other suit. At oral argument plaintiffs emphasized the consent judgment in *Black & Decker, Inc. v. Sanyo Electric Inc.*, No. 83–150 (D.N.J. June 11, 1984) (Exhibit A). While the Court notes for its cursory view at oral argument that the Sanyo and Norelco Machines are similar in appearance, neither that consent judgment nor the four other judgments are binding here. The Court has no way of knowing what legal, economic or other considerations prompted Sanyo Electric Inc. and the three other defendants do agree to consent judgments. In addition, the defendant against which plaintiff obtained a jury verdict, Skagg Companies, Inc. (Exhibit E) sold portable vacuum cleaners which were exact copies of design patent '611. Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, filed March 12, 1985, at 2.

(Plaintiffs' Brief in Opposition to Motion for Summary Judgment, filed April 1, 1985, at 16). Defendant identifies those aspects of the configurations of the two machines that are similar and those that are distinctive and then asserts that the similar feature is not a novel one. Defendant's line of reasoning is identical to that in the *Litton* decision, *supra*, where the court isolated the points of novelty in the plaintiff's microwave oven, identifying as novel features the oven door with a three stripe door frame, the absence of a handle on the door, and a latch release lever on the door frame. *Litton, supra,* 728 F.2d at 1446. The court then distinguished the Litton and Whirlpool products by pointing out that the Whirlpool product lacked these novel features. *See also Unette Corp. v. Unit Pack Co., Inc., supra.* In the instant case, defendant has not infringed the plaintiffs' design patent '661 because the wedge shaped bowl, the only point of similarity between the two products in issue, is not a novel feature of that patent.

■ Finally, the Court, in ruling that the defendant may use the wedge shaped bowl as part of its configuration of the NORELCO CLEAN UP MACHINE, makes no assertion as to the validity or invalidity of the plaintiffs' design Patent '661—the Black & Decker DUSTBUSTER, as an overall configuration, may be a novel design; the patent may be valid, even if it used individual features that are in the public domain, such as the wedge-shaped bowl. *Lancaster Colony Corp. v. Alden,* 506 F.2d 1197 (2d Cir.1974).

### III. TRADEMARK INFRINGEMENT CLAIM

■ In order to show that NAPC has infringed its trademark, Black & Decker, under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), must prove: (1) that the trade dress or product configuration of the two competing products are confusingly similar; (2) that the appropriated features of the trade dress or product configuration are primarily non-functional; and (3) that the product or trade dress has acquired

secondary meaning. *Litton, supra,* 728 F.2d at 1445. *Cf. Warner Bros. v. American Broadcasting Co.,* 720 F.2d 231, 246 (2d Cir.1983) (*"Warner Bros."*).

■ Defendant raises three defenses with respect to the first two requirements. First, NAPC argues that the configuration of the NORELCO CLEAN UP MACHINE is substantially different from Black & Decker's DUSTBUSTER, is prominently labeled, and therefore is not confusingly similar. Second, it asserts a right to use the configuration because the Black & Decker design has been disclosed in two previous mechanical patents, so that designs are functional in nature. Finally, defendant argues that the features of the Black & Decker design are either functional or have not been used by NAPC. Defendant's first defense is meritorious.

### A. *Absence of Likelihood of Confusion*

Among the factors to be considered when determining the likelihood of confusion are: "the degree of similarity between the marks in appearance and suggestion; the similarity of the products; ... the degree of care likely to be exercised by the consumers; the strength of the complainant's mark; [and] actual confusion." *B & L Sales Associates v. H. Daroff & Sons, Inc.,* 421 F.2d 352, 354 (2d Cir.1970), *citing Miss Universe, Inc. v. Patricilli,* 408 F.2d 506, 508 (2d Cir.1969).

While the likelihood of confusion is "fairly frequently an issue of fact on which reasonable minds may differ, ... the issue is amenable to summary judgment in appropriate cases." *Warner Bros., supra,* 720 F.2d at 246. Three factors are appropriate here: (1) the noted differences in the physical appearances of the product; (2) the clear labeling by NAPC of the NORELCO CLEAN UP MACHINE; and (3) the expense of the machines.

As previously noted, the Black & Decker DUSTBUSTER and the NORELCO CLEAN UP MACHINE have a similar appearance in that each machine has a wedge shaped bowl. This fact is significant in order to evaluate the likelihood of confusion that exists by virtue of this similar

appearance. In its evaluation, the Court has judged the likelihood of confusion based not on its own subjective assessment of the products, but on "whether the ordinary prudent customer in the marketplace would likely be confused." 2 McCarthy on Trademarks and Unfair Competition § 23.-20 (1st ed. 1984). The similarity in the wedge shaped bowl by itself is not enough to cause the likelihood of confusion. The two products, when their general features are compared, are so dissimilar that they leave a general overall impression in the minds of prudent buyers that the two products do not come from the same source. Again, as noted in Part II. A., *supra*, three major differences between the Black & Decker DUSTBUSTER machine and the NORELCO CLEAN UP MACHINE distinguish the two products such that there exists no likelihood of confusion. First, the Norelco machine has a power handle with a closed looped design resembling a parallelogram, whereas the Black & Decker DUST-BUSTER handle is elongated and extends rearward from the dust bowl. Second, the air vents in the Norelco design are plain lateral slits located forward of the handle; in contrast, the Black & Decker vents extend around the sides of the housing. Third, the Norelco handle houses an on/off button like a trigger, whereas the on/off button of the Black & Decker DUSTBUS-TER is located conspicuously on top of the handle.

In addition to these general overall differences between the two machines, the NORELCO CLEAN UP MACHINE is so clearly and prominently labeled that no likelihood of confusion exists between it and the Black & Decker DUSTBUSTER. The conspicuous labeling is found both on the box of the NORELCO CLEAN UP MA-CHINE and on the machine itself. "The most common and effective means of apprising the intended purchasers of the source of goods is a prominent disclosure ... of the manufacturer's trade name [and when] that is done, there is no basis for the charge of unfair competition." *Litton, supra,* 728 F.2d at 1446. Moreover, the defendant's brand, Norelco, is a well-known consumer brand and trademark and the conspicuous use of this brand on products is further evidence that consumers are not likely to be confused as to the source of those products.

While labeling by itself may not in every case be sufficient to overcome the likelihood of confusion, other factors, such as the prominence of the label, the type of product involved, the cost of the product and the level of sophistication of the buyers may support the strength of the label in avoiding confusion. "As in many areas of the law, there can be no bright line." *Id.* at 1443. One easily identifiable factor to consider is cost. High fidelity speakers, microwave ovens, and electric ranges are sufficiently expensive that the clearly labeled product of one manufacturer will not be confusingly similar to a like product of another manufacturer. "The ordinary consumers of such goods would exercise much more discriminating care in the purchase of such items than would the purchaser of an inexpensive routinely purchased product, such as a desk-style checkbook." *Litton, supra,* 728 F.2d at 1446. Other examples of such expensive items include carpets, mattresses, furnaces, air conditioning units, sets of silverware, cameras, and snowmobiles. McCarthy, *supra,* at § 23.-20. The portable vacuum cleaners here cost between $20 and $40, which is substantially less than the prices of the items listed above, but nonetheless is a price range sufficiently high that an average consumer would examine carefully the product before purchase. Such an examination would, at a minimum, cause the ordinary prudent buyer to read the manufacturer's clearly labeled name on the product. Moreover, such an examination is likely because the product is not the kind of household item that one purchases frequently, but rather is an item that the purchaser expects will last for a lengthy duration and therefore would require care in its purchase.

B. *Plaintiffs' Survey Information*

The standard for determining the likelihood of confusion is whether "an appreciable number of ordinary prudent purchasers [will] be misled or indeed simply confused

as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Plaintiffs' evidence fails to meet this standard. Plaintiffs' evidence consists of survey evidence collected by plaintiffs and of affidavits attesting to the secondary meaning of the Black & Decker configuration and trade dress.

Plaintiffs conducted a survey in order to demonstrate that the two products in issue are confusingly similar. The survey was conducted by showing to qualified respondents a newspaper advertisement with a variety of household products, including the DUSTBUSTER vacuum. The ad was then removed from view and respondents were asked to recall any products advertised. Those who recalled the DUSTBUSTER vacuum cleaner were later shown several household products on display, including a NORELCO CLEAN UP MACHINE. At this point the respondents were asked to identify the products in the display which had been depicted in the newspaper advertisement. According to plaintiffs, 44% of those respondents incorrectly identified the NORELCO CLEAN UP MACHINE as the Black & Decker DUSTBUSTER that had been shown in the advertisement.

▬▬▬ While survey evidence is one of the "evidentiary routes to prove the likelihood of confusion", McCarthy, *supra*, at § 23.20, the survey is not necessarily determinative of the issue of the likelihood of confusion. *Cf. Warner Bros., supra*, 720 F.2d at 245 ("cautioning against 'the dangerous precedent of allowing trial by the court to be replaced by public opinion poll,'" *citing Ideal Corp. v. Kenner Products Division of General Mills Fun Group, Inc.*, 443 F.Supp. 291, 304 (S.D.N.Y.1977)). The survey must be relevant "as to whether an ordinary shopper might be confused into buying [one product] when intending to buy [the other]." *Litton, supra*, 728 F.2d at 1447. Plaintiffs' survey lacks relevancy, primarily because it lacks adequate control for the possibility of ambiguity and confusion in the questions to the respondents. The questions that were posed do not adequately distinguish between *products* and *brand names*. Since the NORELCO CLEAN UP MACHINE was the only hand held vacuum cleaner among the various household items on display, the only firm conclusion that can be drawn from the study is that the Black & Decker DUSTBUSTER and the NORELCO CLEAN UP MACHINE share several features in common. *See Litton, supra*, 728 F.2d at 1447.

▬▬▬ The affidavits that plaintiffs presented to prove secondary meaning also do not present a material issue of fact relevant to the likelihood of confusion. The affidavits instead summarize the scope and cost of Black & Decker's marketing efforts in regard to the DUSTBUSTER machine. These affidavits are relevant to the issue of secondary meaning. Plaintiffs attempt to link this evidence with the great potential for the likelihood of confusion, but plaintiffs' logic is flawed—secondary meaning and the likelihood of confusion, though related, are separate legal issues. Secondary meaning is a prerequisite for confusion, for without secondary meaning confusion in the mind of the consumer does not exist. Beyond providing evidence for the circumstances under which the likelihood of confusion may exist, evidence of marketing strategy does not relate to the likelihood of confusion. To show confusion, other factors must be considered, such as evidence of actual confusion or an "inference arising from a judicial comparison of the conflicting marks themselves." McCarthy, *supra*, at § 23.20.

C. *Conclusions*

Four factors were considered in deciding that the Black & Decker DUSTBUSTER and the NORELCO CLEAN UP MACHINE are not confusingly similar—(1) the Court's own inferences drawn from an overall examination of the products, including the differently shaped handles, air vents, and location of on/off buttons; (2) the prominent display of the Norelco trademark on the NAPC product; (3) the relationship between the price of the products and the level of sophistication of the probable buyers; and (4) a review of the plaintiffs' survey evidence and the affidavits

attesting to secondary meaning. Based on these factors, the Court concludes that no likelihood of confusion of the products exists. This conclusion is determinative of the issue of trademark infringement and "[i]t is, therefore, not necessary for this Court to inquire further into questions of functionality or secondary meaning." *Scovill, Inc. v. Dynamics Corp. of America, supra,* slip op. at 17.

## IV. PENDENT STATE CLAIMS

■ The second count of Black & Decker's complaint alleges claims under state law—that defendant's vacuum cleaners substantially embody the appearance of the Black & Decker DUSTBUSTER vacuum machine; that defendant has usurped the good will and exploited the advertising and promotion of plaintiffs' DUSTBUSTER, and that defendant has copied plaintiffs' design in order to pass off the Norelco Clean Up machine as that of the plaintiffs.

■ The Supreme Court has held that federal law preempts any state unfair competition claim for copying designs that have no patent. *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964). More recently, the *Litton* court applied this preemption doctrine to cases in which a product has been found not to infringe the plaintiffs' design. *Litton, supra,* 728 F.2d at 1448. Claims of trademark infringement and "passing off" do not, however, protect rights equivalent to the rights protected by patent law and are therefore not preempted. *Warner Bros., supra,* 720 F.2d at 247.

For the same reasons as stated in Part III, *supra,* NAPC's motion for summary judgment is granted with respect to the Second Count.

## V. CONCLUSION

Defendant's motion for partial summary judgment is granted with respect to Count I regarding the design patent '661 and with respect to Counts II and III.

*See* 28 U.S.C. Section 636(b); F.R.Civ.P. 72; Rule 2 of the Local Rules for United States Magistrates, United States District Court of Connecticut.

## RECOMMENDED RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION

### Nov. 26, 1985

On July 24, 1985, this Magistrate filed a Recommended Ruling Granting Defendant's Motion for Partial Summary Judgment ("Recommended Ruling"), in this patent and trademark infringement suit. With respect to the patent infringement claim, the court relied upon the "eye" test articulated in *Gorham Co. v. White,* 81 U.S. (14 Wall) 511, 528, 20 L.Ed. 731 (1871), under which the court is to look toward "the eye of an ordinary observer." Recommended Ruling at 4–9. In addition, the court applied the "point of novelty" test, which supplements the *Gorham* "eye" test. *Id.* at 9–12. With respect to the trademark infringement claim, the court again looked to the ordinary consumer, to ascertain that there was a likelihood of confusion between the plaintiff's and defendant's products. *Id.* at 12–18. The court considered at some length plaintiff's survey evidence. *Id.* at 18–21. As the Second Circuit has stated, the standard for determining the likelihood of confusion is whether "an *appreciable* number of ordinary prudent purchasers [will] be misled or indeed simply confused as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979) (emphasis added).

■ Plaintiff filed an objection to the Recommended Ruling on October 28, 1985. On November 18, 1985, it filed an affidavit, dated November 8, 1985, by a nineteen year-old student at a hair design school, who resides in Eldridge, Iowa. The affiant stated that on or about December 3, 1984, she purchased a Christmas present for her mother, which she believed was plaintiff's DUSTBUSTER; she later learned, after having applied for a rebate, that she had purchased defendant's NORELCO CLEAN UP MACHINE 2. This affidavit was referred to the Magistrate on November 19, 1985, to be treated as a motion for reconsideration.

This single affidavit does not demonstrate that "an appreciable number of ordinary prudent purchasers" will be misled or confused as to the source of the goods in question. The affidavit only indicates that a single purchaser in Iowa was confused.

Accordingly, plaintiff's motion for reconsideration is denied.

*See* 28 U.S.C. Section 636(b); F.R.Civ.P. 72; Rule 2 of the Local Rules for United States Magistrates, United States District Court for the District of Connecticut.